**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS**

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

NOV 3 0 2010

BY

CHRIS R. JOHNSON, CLERK

DEPUTY CLERK

ALLEN THATCHER, Individually and as
Class Representative on Behalf of all Similarly
Situated Persons,

        Plaintiff,

vs.

THE HANOVER INSURANCE GROUP, INC.
and THE MASSACHUSETTS BAY
INSURANCE COMPANY,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO.: _10-4172_

Miller County Circuit Court
Case No. CV-2010-527-1

## NOTICE OF REMOVAL

To:    THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF ARKANSAS

Defendants The Hanover Insurance Group, Inc. ("Hanover Group") and The
Massachusetts Bay Insurance Company ("Massachusetts Bay"), through undersigned counsel
and pursuant to 28 U.S.C. §§ 1441 and 1446, file this Notice of Removal of the captioned action,
*Allen Thatcher v. The Hanover Insurance Group, Inc. and The Massachusetts Bay Insurance
Company*, Case No. CV-2010-527-1 on the docket of the Circuit Court of Miller County,
Arkansas.

In support of their Notice of Removal, Defendants respectfully allege:

1.    On or about October 20, 2010, Plaintiff Allen Thatcher commenced the captioned
action by filing a Complaint in the Circuit Court of Miller County, Arkansas. On or about
October 28, 2010, Plaintiff filed a First Amended Complaint in the state court. A copy of the
Complaint, First Amended Complaint, and all process, pleadings, and orders filed in the state
court action are attached hereto as Exhibit A.

2.    A Summons and the First Amended Complaint were received by the corporate

- 1 -

secretary of Massachusetts Bay by Federal Express on November 1, 2010. A Summons and the First Amended Complaint were served on the Corporation Trust Company as agent for service of process for Hanover Group on November 1, 2010.

3.      This Notice of Removal is filed within 30 days of service of process and is therefore timely under 28 U.S.C. § 1446(b).

4.      This Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), for the reasons set forth more fully below.

## PARTIES

5.      Plaintiff Allen Thatcher is an individual domiciled in Texarkana, Arkansas. (First Amended Complaint, ¶ 6.)

6.      Defendant Hanover Group, although it has no contractual or other relationship with Plaintiff, does not issue insurance policies, and is not a proper defendant in this case, is a corporation organized under the laws of Delaware with its principal place of business in Worcester, Massachusetts.[1] (*Id.*, ¶ 7.)

7.      Defendant Massachusetts Bay is a corporation organized under the laws of New Hampshire with its principal place of business in Worcester, Massachusetts.

---

[1] Hanover Group is a holding company and is the ultimate parent corporation of Massachusetts Bay as well as two other insurance companies that issue homeowners' insurance policies in Arkansas. While there is no way to know for certain why this action was filed against only one of these three companies, had the action been filed against all three companies, the damages potentially recoverable on the breach of contract count alleged in the First Amended Complaint alone almost certainly would exceed the $5 million amount in controversy threshold necessary to establish CAFA jurisdiction, even without regard to any of the other counts or other potential categories of damages.

## PLAINTIFF'S ALLEGATIONS[2]

8.      This case is brought as a purported class action under Arkansas Rule of Civil Procedure 23. (First Amended Complaint, ¶ 8.) Plaintiff alleges that his property was insured by Defendants, and that he made a claim with Defendants for property damage occurring on or about March 31, 2008. (*Id.*, ¶¶ 16-18.) Plaintiff alleges that Defendants improperly failed to include fees for a general contractor's services, known as general contractor overhead and profit (hereinafter, "GCOP"), in payments made to Plaintiff. (*Id.*, ¶¶ 21-25.) Plaintiff further alleges that "Defendants engaged in a fraudulent scheme to conceal the availability of GCOP and entitlement to payments for GCOP from their insureds." (*Id.*, ¶ 28.) Plaintiff claims that "[t]hese underpayments . . . have generated extensive profits and ill-gotten gains to Defendants. . . . Defendants' failure to compensate their insureds for benefits to which they are entitled constitutes fraud, constructive fraud, breach of contract and results in Defendants' unjust enrichment." (*Id.*, ¶ 1.)

9.      Plaintiff purports to bring this lawsuit on behalf of a putative class defined as "Any and all customers of The Massachusetts Bay Insurance Company who are residents of Arkansas, who received payments under a homeowners insurance policy issued by The Massachusetts Bay Insurance Company for physical loss or damage to their dwelling, such dwelling located in A·kansas, at any time between January 1, 2004 and December 31, 2009."[3]

_____

[2] Defendants do not admit the underlying facts as alleged by Plaintiff or as summarized herein. Defendants expressly deny that they have any liability to Plaintiff or the putative class. Similarly, Defendants reserve their rights to challenge the legal sufficiency of the allegations in the First Amended Complaint.

[3] The class definition further provides that "Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Persons or entities who timely opt-out of this proceeding using the correct protocol for 'opting-out' that will be formally established by this Court; (3) any and all Federal, State and/or Local

(*Id.*, ¶ 31.)

10.     The Complaint pleads four separate causes of action: unjust enrichment (Count I); fraud (Count II); constructive fraud (Count III); and breach of contract (Count IV).  (*Id.*, ¶¶ 46-80.)

11.     The Complaint seeks, on behalf of Plaintiff and the putative class, damages for breach of contract, damages for unjust enrichment, damages for fraud, attorneys' fees, interest and costs.  (*Id.*, ¶¶ 57-58, 69-70, 73, 80.)

## JURISDICTION UNDER CAFA

12.     CAFA, enacted in 2005, was intended "to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits." *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009).  Removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), where, as here, a purported class action is filed in which there is minimal diversity of citizenship and the aggregate amount in controversy for the entire proposed class exceeds $5,000,000.

13.     This case is a "class action" within the meaning of CAFA because it was brought under a state statute or rule, namely Ark. R. Civ. P. 23, authorizing an action to be brought by

---

Governments, including, but not limited to, their Departments, Agencies, Divisions, Bureaus, Boards, Sections, Groups, Councils and/or any other subdivision, and any claim that such governmental entities might have directly or indirectly; (4) Any currently-sitting Arkansas State Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; (5) Any claim which resulted in the payment of policy limits or more by Defendants; and (6) Plaintiff's Counsel."  (First Amended Complaint, ¶ 31.)  In analyzing the claims of putative class members for purposes of this Notice of Removal, Defendants have used reasonable measures to attempt to identify any claims attributable to any persons or entities excluded from the class, including identifying whether any claims were those of persons described in categories (1), (4), (5) and (6) above (except for non-spouses falling within the third degree of consanguinity to currently sitting Arkansas State Court Judges or Justices, for which Defendants were unable to locate an available listing), and removing from the analysis the claims (if any) attributable to these categories.  With respect to category (3), insofar as Defendants are aware none of these claims are attributable to governmental entities.

one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); First Amended Complaint, ¶¶ 8, 31. CAFA is applicable "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8).

**Minimal Diversity**

14.    This case satisfies the minimal diversity requirement of CAFA because at least one member of the putative class is a citizen of a state different from at least one defendant. *See id.* § 1332(d)(2)(A). The named Plaintiff is a citizen of Arkansas. (First Amended Complaint, ¶ 6.) Neither of the Defendants is a citizen of Arkansas. Defendant Hanover Group is a citizen of Delaware (where it is incorporated) and Massachusetts (where it has its principal place of business). Defendant Massachusetts Bay is a citizen of New Hampshire (where it is incorporated) and Massachusetts (where it has its principal place of business).

**Amount in Controversy**

15.    As the Eighth Circuit has explained, "a party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence regardless of whether the complaint alleges an amount below the jurisdictional minimum." *Bell*, 557 F.3d at 958. In analyzing the amount in controversy, the question is "not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . . ." *Id.* at 959 (internal quotations and citation omitted). If the defendant "prove[s] by a preponderance of the evidence that the amount in controversy is satisfied, remand is only appropriate if [the plaintiff] can establish that it is legally impossible to recover in excess of the jurisdictional minimum." *Id.* at 959. Any allegation by the plaintiff with respect to a specific amount being claimed is immaterial where there is "no evidence that upon remand [the state] court would prohibit recovery in excess of the amount alleged as a matter of law." *Id.*

16.     This case satisfies CAFA's amount in controversy requirement because the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  *Id.*, § 1332(d)(6).  In determining the amount in controversy, all applicable damages, including statutory damages, attorneys' fees, and punitive damages, are properly considered.  *See, e.g., Powell v. State Farm Fire & Cas. Co.*, 2010 U.S. Dist. LEXIS 6796, at *2-3 (W.D. Ark. Jan. 27, 2010) (Barnes, J.) (holding that, in case involving insurance claim for property damage, amount in controversy included potential statutory damages under Ark. Code Ann. § 23-79-208 of 12% of amount sought under insurance policy, plus attorneys' fees); *Brown v. City Chevrolet, LLC*, 2009 U.S. Dist. LEXIS 100320, at *3 (W.D. Mo. Oct. 28, 2009) (potential punitive damages considered in finding that amount in controversy under CAFA was satisfied); *Bass v. Carmax Auto Superstores, Inc.*, 2008 U.S. Dist. LEXIS 11180, at *4 (W.D. Mo. Feb. 14, 2008) (potential punitive damages considered in finding that amount in controversy under CAFA was satisfied).  Set forth below is an analysis of the damages potentially available with respect to each of the four counts alleged in the First Amended Complaint.[4]

**Amount in Controversy:  Breach of Contract (Count IV)**

17.     With respect to the amount in controversy on Plaintiff's claim for breach of contract (Count IV), Plaintiff alleges that Defendants breached the insurance contracts "by failing to include payments for GCOP."  (First Amended Complaint, ¶ 79.)  Plaintiff alleges that

---

[4] Because all of the claims set forth in the complaint are rooted in the assertion that Massachusetts Bay failed to pay benefits properly payable under the insurance policies, the analysis of potential damages will begin with the breach of contract count, even though in the complaint this is the last pled of the four counts.

"[t]he percentage assessed for overhead and profit within the construction and insurance industries is 20% of the estimated job." (*Id.*, ¶ 3.) As an example, Plaintiff explains that "where the repair costs on a job equal $10,000, the GCOP payment will be an additional $2,000." (*Id.*, ¶ 3.) A reasonable estimate of the "repair costs" attributable to the homeowners' insurance claims of Plaintiff and putative Class Members for which payments were made for physical loss or damage to the dwelling between January 1, 2004 and December 31, 2009 can be made by ascertaining the total amount of loss that was determined to be covered under their policies with respect to such physical loss or damage. This amount consists of the sum of the benefits paid on such claims and the deductibles associated therewith. For example, if the repair costs on a particular claim were determined to be $10,000, and the amount paid was $9,000 after applying a deductible of $1,000, then if GCOP were payable on the claim this would add another $2,000 in benefits (i.e., 20% of the $10,000). Thus, the amount in controversy with respect to the breach of contract claim (Count IV) can be reasonably estimated to constitute 20% of the aggregate total of prior payments plus deductibles.

18.    Plaintiff and the proposed class appear to be claiming GCOP only with respect to structural losses. (*See* First Amended Complaint, ¶¶ 36, 38.) In estimating the amount in controversy on the breach of contract claim, it is therefore necessary to disregard any claim payments attributable to non-structural loss (*e.g.*, payments for damage to contents of the home and for additional living expenses). Starting on approximately March 1, 2006, Massachusetts Bay maintained data that segregates structural payments, but for claims prior to March 1, 2006, the available data does not segregate payments between structural and non-structural payments.

19.    With respect to claims that fall within the proposed class and have dates of loss from January 1, 2004 through February 28, 2006, a review of data maintained by Massachusetts

Bay reflects that the total of all payments made on such claims was approximately $4,543,069, and the aggregate amount of the deductibles on such claims was approximately $560,570. Without reviewing all of the claim files for this time period, it is not possible to determine precisely what portion of these payments was for non-structural losses. However, a preliminary review of a portion of the claim files for this time period indicates that non-structural losses amount to less than 10% of the total amount paid. Assuming that structural losses amount to approximately 90% of $4,543,069 (*i.e.*, $4,088,762), an estimated figure for total payments plus deductibles during this time period is $4,649,512.

20.     Plaintiff is claiming GCOP on behalf of the entire proposed class. (*See* First Amended Complaint, ¶¶ 5, 80.)  Plaintiff claims that "Defendants have a practice of not including required payments for GCOP," that "Defendants have a practice of not disclosing to Plaintiff and other customers that Plaintiff and other customers are entitled to GCOP," and that "Defendants engaged in a fraudulent scheme to conceal the availability of GCOP . . . ." (*Id.*, ¶ 26.)  The proposed class is defined as all Arkansas policyholders making claims for structural losses during the relevant time period, and is not limited to exclude persons who might have received payments for GCOP or might not be entitled to GCOP. (*Id.*, ¶ 31.)  Plaintiff alleges that the entire class is entitled to payments for breach of contract. (*See* First Amended Complaint, ¶¶ 5, 80.)  Although Defendants dispute these allegations,[5] for purposes of determining the amount in controversy the Court cannot decide the merits and Plaintiff's allegations must be assumed to be true. *See, e.g., Wiemers v. Good Samaritan Soc'y*, 212 F. Supp. 2d 1042, 1048 (N.D. Iowa 2002).  Thus, the amount in controversy for Count IV with respect to the January 1, 2004 through February 28, 2006 time period is approximately $929,902 (*i.e.*, 20% of $4,649,512).

_____

[5] Defendants believe the evidence will show that Massachusetts Bay has a practice of paying GCOP when appropriate.

21.     For claims that fall within the proposed class and have dates of loss from March 1, 2006 through December 31, 2009, a review of available data reflects that the total amount paid by Massachusetts Bay for structural losses on such claims was approximately $6,590,776. The aggregate total of the deductibles on such claims was approximately $815,100. The total of the amounts paid plus deductibles is $7,405,877. Thus, the amount in controversy for Count IV with respect to the March 1, 2006 through December 31, 2009 time period is approximately $1,481,175 (*i.e.*, 20% of $7,405,877).

22.     The total amount in controversy with respect to breach of contract, as set forth in Paragraphs 20 and 21 above, is approximately $2,411,077.

23.     If Plaintiff and the putative class are successful in establishing a breach of contract, they will also be potentially entitled to an additional 12% plus attorneys' fees. Arkansas law provides that, as a general rule, "[i]n all cases in which loss occurs and the . . . property . . . insurance company . . . shall fail to pay the losses within the time specified in the policy after demand is made, the [company] shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." Ark. Code Ann. § 23-79-208(a)(1).[6]  Such damages and attorneys' fees are appropriately considered part of the amount in controversy for purposes of federal jurisdiction. *See Powell*, 2010 U.S. Dist. LEXIS 6796, at *2-3.

24.     Here, an additional 12% statutory damages added to the estimated amount in

---

[6] There are certain exceptions to this general rule where the amount recovered is more than 20% below the amount demanded (assuming there is a specific amount in demand). *See* Ark. Code Ann. § 23-79-208(d). For purposes of analyzing the amount in controversy, however, it must be presumed that Plaintiff and the putative class can prove the facts alleged and recover on the claims alleged.

controversy set forth in Paragraph 22 would be an additional $289,329. Attorneys' fees are addressed in Paragraphs 30-31 below.

**Amount in Controversy:  Unjust Enrichment (Count I)**

25.     Plaintiff has also pled a claim for unjust enrichment (Count I).  With respect to unjust enrichment, under Arkansas law, "[t]he measure of damages for unjust enrichment is the amount of unfair gain received by those unjustly enriched." *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1996) (citing *Holland v. Walls*, 621 S.W.2d 496, 499 (Ark. Ct. App. 1981) (instructing trial court that damages for unjust enrichment should be measured by "the extent of appellee's unjust enrichment through the use of appellant's property")).  Consistent with Arkansas law, Plaintiff alleges that Defendants "have generated extensive profits and ill-gotten gains" by allegedly failing to pay GCOP when owed, and that "Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should have been paid to Plaintiff and the Class Members as GCOP." (First Amended Complaint, ¶¶ 1, 54.)

26.     Although Plaintiff does not specify precisely the amount of damages sought on the unjust enrichment claim or the manner in which Plaintiff will seek to have those damages calculated, that is immaterial because under the Federal Rules of Civil Procedure and the Arkansas Rules of Civil Procedure, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. P. 54(c); *see also* Ark. R. Civ. P. 54(c).[7]  On the unjust

---

[7] It is therefore of no consequence that the First Amended Complaint alleges that "Plaintiff does not seek double recovery by setting forth multiple theories of recovery" (a disclaimer which in any event is not and could not be binding upon the putative class, *see infra* at Paragraph 37), or that "the total amount in controversy is less than $5,000,000, exclusive of interest and costs, for purposes of federal jurisdiction." (First Amended Complaint, at Prayer for Relief.) *See also Bell*, 557 F.3d at 958 (explaining that ad damnum amount requested in complaint was not pertinent to determining amount in controversy under CAFA).

enrichment clam, Plaintiff and the putative class presumably will attempt to recover investment gains earned by Massachusetts Bay through retention of the amounts that allegedly should have been paid under the insurance contracts.

27.    Investments for Massachusetts Bay are consolidated with investments of affiliated entities that are part of Hanover Group.  The annual net investment income disclosed by Hanover Group in its Statistical Supplements furnished as exhibits to its Form 8-K filings with the Securities and Exchange Commission announcing earning results for periods ending December 31, 2004 through September 30, 2010, for continuing operations, was as follows:

| | |
|---|---|
| 2004 | 5.10% |
| 2005 | 5.25% |
| 2006 | 5.39% |
| 2007 | 5.50% |
| 2008 | 5.45% |
| 2009 | 5.19% |
| 2010[8] | 5.16% |

28.    Applying the net investment income rates set forth in Paragraph 27 above to the amounts that Plaintiff claims should have been paid for GCOP yields the following estimate of the approximate amount in controversy on the unjust enrichment claim, assuming that a judgment were entered by the end of 2011[9]:

---

[8] Through September 30, 2010.

[9] In performing this calculation, the rate of 5.16% (which has been earned in 2010 through September 30, 2010) is used through the end of 2010, and a rate of 5.30% (the average rate for the years 2004 through 2010) is used for the year 2011.  The dollar figures in the middle column consist of the approximate amounts claimed to be improperly withheld during the time period set

| Time Period of Claims | Estimated Amount Allegedly Improperly Withheld | Estimated Investment Income |
|---|---|---|
| 1/1/04-12/31/04 | $224,239 | $98,079 |
| 1/1/05-12/31/05 | $616,408 | $225,414 |
| 1/1/06-12/31/06 | $632,241 | $187,044 |
| 1/1/07-12/31/07 | $126,537 | $28,887 |
| 1/1/08-12/31/08 | $471,717 | $77,742 |
| 1/1/09-12/31/09 | $349,481 | $37,511 |
| Total Estimated Amount in Controversy | | $654,677 |

**Amount in Controversy: Fraud (Count II) and Constructive Fraud (Count III)**

29.     Plaintiff also makes extensive allegations regarding fraud and constructive fraud in Counts II and III, alleging that Defendants made false representations and gave false assurances regarding the amounts owed and available under the insurance policies, and fraudulently concealed information regarding GCOP. (*See* First Amended Complaint, ¶¶ 60-73.) As with the unjust enrichment claim, Plaintiff does not specifically allege the amount of damages sought for fraud or the method of calculation, but that is immaterial because the court must determine what damages potentially could be awarded. *See* Paragraph 26 and fn. 7, *supra*. Under Arkansas law, the measure of damages for fraud typically "is the benefit of the bargain

---

forth in the left-hand column.  The dollar figures in the right-hand column consist of the estimated investment income earned through the end of 2011 on the amounts claimed to be improperly withheld during the pertinent time period (for example, the investment income on amounts claimed to be improperly withheld during the year 2004 is calculated for the period from January 1, 2005 through December 31, 2011).  These calculations are conservative because, for example, the estimated investment income on amounts claimed to be improperly withheld during 2004 does not include any investment income that would have been earned during the year 2004.

measure, in which the injured party is entitled to the difference between the value of the property, business, or chattel as represented and its actual value at the time of the purchase." *Interstate Freeway Services, Inc. v. Houser*, 835 S.W.2d 872, 875 (Ark. 1992); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 155 (Ark. 2005). Here, damages potentially available on the fraud claims could be calculated as the difference between the premiums paid for the homeowners' insurance policies that were purchased, and the actual value of the premiums assuming that the putative class members were provided with the allegedly correct information concerning the allegedly improper policies and procedures. The total direct written premium for Massachusetts Bay homeowners' policies in Arkansas during the putative class period was $15,941,174. Approximately 88% of that amount was attributable to property insurance,[10] and assuming that 90% of the premium for property insurance was attributable to the risk of structural losses (for the reasons set forth above), the approximate amount of premium attributable to structural losses would be $12,625,410. If, due to Defendants' alleged fraud, the actual value of the overage provided for structural losses was 20% less than what was charged, damages that Plaintiff and the putative class might potentially be entitled to on the fraud claim stemming from this diminished value would total approximately $2,525,082. This would potentially be in addition to any damages available on the other counts in the complaint.[11]

**Amount in Controversy: Attorneys' Fees**

30.    With respect to attorneys' fees, in cases brought against insurance companies

---

[10] Homeowners' insurance policies provide both property and liability coverage.

[11] In a class action that was tried in an Oklahoma state court, in which some of the very same plaintiffs' attorneys who represent Plaintiff here asserted GCOP-related claims against Farmers Insurance Company, the jury verdict for fraud was equal to the jury verdict for breach of contract. (*See* Letter from Douglas A. Terry, Esq. to J. Kendall Huber dated July 13, 2010, attached as Exhibit B hereto.)

seeking to recover under insurance policies, attorneys' fees are available under Ark. Code Ann. §
23-79-208(a)(1). Arkansas courts have found attorneys' fees of 40% of the recovery to be
reasonable under that statute. *See, e.g., Capital Life & Accident Ins. Co. v. Phelps*, 66 S.W.3d
678, 682 (Ark. Ct. App. 2002) (affirming award of attorneys' fees calculated as "forty percent of
the amount recovered by appellee under the policies, plus penalty and prejudgment interest").
Here, attorneys' fees of 40% of the potential total recovery for compensatory damages, as set
forth above, would be an additional $2,352,066.

31.     Because this case is a putative class action, the attorneys' fees awarded in the
Miller County Circuit Court potentially could exceed 40% of the recovery. In other class actions
involving the exact same issue, tens of millions of dollars have been awarded in attorneys' fees
by the Miller County Circuit Court in cases involving the very same lawyers who represent
Plaintiff here and the very same type of claims seeking to recover for GCOP. These fees were
awarded where the case settled *prior* to trial, and *prior* to class certification. Here, it is
reasonable to assume that if this case were to proceed to class certification and a trial in the state
court, and Plaintiff were to prevail on both, Plaintiff's counsel will seek an award from the state
court of at least several million dollars in attorneys' fees which they will contend are reasonable
fees. *See, e.g.*, Cases cited in Letter from Douglas A. Terry, Esq. to J. Kendall Huber dated July
13, 2010, attached as Exhibit B hereto.

**Amount in Controversy:  Punitive Damages**

32.     Although Defendants vigorously deny engaging in any conduct that would give
rise to punitive damages, Plaintiff's allegations must be accepted as true for purposes of
analyzing the amount in controversy. Where an award of punitive damages is potentially
available on the claims alleged, that must be considered in determining the amount in

- 14 -

controversy. *See Crawford v. F. Hoffman La Roche*, 267 F.3d 760, 766 (8th Cir. 2001)

("Punitive damages, of course, may be used to establish diversity jurisdiction.").

33.     Punitive damages are potentially available under Arkansas law on Plaintiff's

claims for fraud and constructive fraud. *See* Ark. Code Ann. § 16-55-206; *Curtis Lumber Co. v.*

*La. Pac. Corp.*, 2010 U.S. App. LEXIS 17665, at \*56 (8th Cir. 2010) (noting that punitive

damages are available under Ark. Code Ann. § 16-55-206, and "punitive damages are

particularly appropriate in cases involving fraud"); *Bukannan v. Rutherford*, 65 Fed. Appx. 576

(8th Cir. 2003) (punitive damages of approximately three times actual damages were awarded on

fraud and constructive fraud claims under Arkansas law); *Union Pac. R.R. Co. v. Barber*, 149

S.W.3d 325, 350 (Ark. 2004) (affirming award of $25 million of punitive damages where

compensatory damages were $5 million).

34.     Plaintiff alleges the type of conduct that, if proven, could potentially lead to an

award of punitive damages. Plaintiff alleges, for example, that:

- "Defendants engaged in a fraudulent scheme to conceal the availability of GCOP and entitlement to payments for GCOP from their insureds. ('GCOP Scheme'). As a result of the GCOP Scheme, Defendants wrongfully profited by failing to properly pay GCOP when owed to their insureds." (First Amended Complaint, ¶ 28.)

- Defendants "have been unjustly and fraudulently enriched as a result of their wrongful, misleading and deceptive conduct." (*Id.*, ¶ 32.)

- "Defendants actively and fraudulently concealed information about GCOP and made specific representations that the amount paid was all that was owed under the homeowners policy, knowing such representations were false." (*Id.*, ¶ 40.)

- "Defendants' retention of monies that should have been paid to Plaintiff and Class Members as GCOP . . . is patently unfair, unjust, inequitable, dishonest and fraudulent in relation to Plaintiff and Class Members." (*Id.*, ¶ 56.)

- "Defendants undertook the GCOP Scheme to perpetuate the acts of misconduct, unfairness, injustice, inequity, dishonesty, fraud and/or unjust enrichment described above . . . ." (*Id.*, ¶ 59.)

- "Defendants knowingly, purposefully and fraudulently concealed and hid material facts and information . . . ." (*Id.*, ¶ 63.)

35.     When Plaintiff served the First Amended Complaint, it was accompanied by a First Set of Interrogatories and Requests for Production of Documents that was over 100 pages in length.[12] These requests seek a vast amount of information regarding Defendants' policies and practices with respect to GCOP and with respect to homeowners' insurance claims in general, the vast majority of which would not be necessary or even useful for purposes of proving a simple breach of contract. This discovery is clearly intended and directed towards establishing the fraud claims.

36.     Punitive damages potentially can be awarded notwithstanding Plaintiff's failure to expressly seek them in his prayer for relief. In *Bowles v. Osmose Utils. Servs.*, 2004 WL 4910143 (W.D. Ark. Dec. 21, 2004) (Hendren, J.), *aff'd*, 443 F.3d 671, 675 (8th Cir. 2006), for example, the court awarded punitive damages, after a bench trial, where there was no prayer for punitive damages in the complaint. *Id.* at *9. The court explained that, under Fed. R. Civ. P. 54(c),[13] "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *Id.* (quoting Fed. R. Civ. P. 54(c)). The court further concluded that an award of punitive damages was appropriate where "[c]ertainly the 'hints' of a claim for punitive damages can be found in the pleadings, discovery, and pretrial filings," such as allegations that the defendant's conduct was "egregious." *Id.* As reflected in Paragraph 34 above, here, as in *Bowles*, there are plenty of "hints" of claims for punitive damages in the First Amended Complaint and the massive

---

[12] The discovery requests are not attached hereto because of their extraordinary length. If Plaintiff files a motion to remand, Defendants will submit a copy of the discovery requests together therewith.

[13] Arkansas state courts have an essentially identical rule. *See* Ark. R. Civ. P. 54(c).

discovery requests served by Plaintiff. *See also Scutieri v. Paige*, 808 F.2d 785, 792 (11th Cir. 1987) (explaining that "a specific prayer for punitive damages was unnecessary. If the complaint alleges conduct that would support a claim for punitive damages, and if evidence is presented creating a jury question on such relief, the judge commits reversible error in not instructing the jury on that issue.") (citation omitted); *Davis v. Kindred Nursing Ctrs. E., L.L.C.*, 2006 U.S. Dist. LEXIS 11425, at *9 (S.D. Ohio Mar. 2, 2006) (holding that punitive damages could be considered in determining amount in controversy, explaining that "[w]hile plaintiff has not specifically requested punitive damages in her complaint, she has never stated that she does not intend to seek punitive damages, and Ohio Rule 54(C) and § 4112.02(A) would permit recovery of punitive damages.").

37.     Although Plaintiff alleges that "Plaintiff specifically disclaims any actual or potential entitlement to punitive damages" (Complaint, at 21), Plaintiff does *not* purport to waive the rights of members of the putative class to seek punitive damages on the claims alleged. Nor could Plaintiff waive the rights of the putative class members in that regard simply because he would prefer to litigate in state court. *See Bass*, 2008 U.S. Dist. LEXIS 11180 at *6 (explaining, in analyzing amount in controversy under CAFA, that "Plaintiff has no right to limit or compromise the recovery of the class without Court approval, particularly before she has even been approved as a representative for the class"); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002) ("it is improbable that [the named plaintiff] can ethically unilaterally waive the rights of the putative class members to attorney's fees without their authorization").

38.     Under Arkansas law, the amount of punitive damages awarded to each plaintiff is, in most instances, limited to the greater of $250,000 or three times the amount of the

compensatory damages award, not to exceed $1 million.[14] *See* Ark. Code Ann. § 16-55-208(a).[15]
The amount of punitive damages that could be sought in this case under Ark. Code Ann. § 16-55-208(a) could be as high as $250,000 per class member.[16]  There are approximately 2,300 policyholders who received payments on claims made under homeowners' insurance policy issued by Massachusetts Bay for damage occurring in Arkansas from January 1, 2004 to December 31, 2009.  An award of punitive damages of $5,000 per class member could be over $11 million in this case, subject to constitutional limitations.  An alternative calculation used by other courts in cases involving jurisdiction under CAFA would be a multiplier of perhaps four or six times the total amount of compensatory damages potentially recoverable by the class.  *See Brown*, 2009 U.S. Dist. LEXIS 100320, at *3 (potential punitive damages of approximately four times potential compensatory damages considered in finding that amount in controversy under CAFA was satisfied); *Bass*, 2008 U.S. Dist. LEXIS 11180, at *4 (potential punitive damages of "approximately 6.7 times the actual damages" considered in finding that amount in controversy under CAFA was satisfied).  Using these metrics that have been applied by other courts in CAFA cases, here four times the potential compensatory damages award, as calculated above, would be over $23 million.  Six times the potential compensatory damages award, as calculated above, would be over $35 million.

---

[14] These limits are adjusted annually by the consumer price index. *See id.*, § 16-55-208(c).

[15] These limitations do not apply if "the finder of fact: (1) Determines by clear and convincing evidence that, at the time of the injury, the defendant intentionally pursued a course of conduct for the purpose of causing injury or damage; and (2) Determines that the defendant's conduct did, in fact, harm the plaintiff." Ark. Code Ann. § 16-55-208(b).

[16] Defendants of course reserve their rights to contest any punitive damages sought on any ground, including but not limited to the constitutionality of any such award.

**Total Amount in Controversy**

39.    As set forth above, the total amount in controversy based on Plaintiff's allegations

in this case is well in excess of the $5 million required for CAFA jurisdiction, as follows:

| | |
|---|---|
| Breach of Contract (Count IV) | $2,411,077 |
| 12% Statutory Damages on Breach of Contract | $289,329 |
| Unjust Enrichment (Count I) | $654,677 |
| Fraud / Constructive Fraud (Counts II and III) | $2,525,082 |
| Attorneys' Fees (40% of amounts set forth above) | $2,352,066 |
| Punitive Damages | $23 million - $35 million |
| Total Estimated Amount in Controversy | $31.2 million - $43.2 million[17] |

**Exceptions to CAFA Jurisdiction**

40.    None of the exceptions to CAFA jurisdiction are applicable.  None of the

Defendants are citizens of the state in which the action was filed, *i.e.*, Arkansas.  Accordingly,

Sections 1332(d)(3) and (d)(4) are inapplicable.  Section 1332(d)(5)(A) is inapplicable because

none of the Defendants are States, State officials or other governmental entities against whom

the district court may be foreclosed from ordering relief.  Section 1332(d)(5)(B) is inapplicable

because the number of members of all proposed plaintiff classes in the aggregate is not less than

100.  Section 1332(d)(9) is inapplicable because Plaintiff's claims do not involve securities or

---

[17] The total estimated amount in controversy as set forth above is far smaller than the jury verdict that was awarded in an Oklahoma state court case involving precisely the same issue here, which was filed by some of the very same plaintiffs' attorneys who represent the Plaintiff here, in which they tried a statewide class action against Farmers Insurance Company.  As they stated in their demand letter to Hanover Group that preceded this litigation, the total amount of that verdict, prior to interest, was $130 million.  (*See* Letter from Douglas A. Terry, Esq. to J. Kendall Huber dated July 13, 2010, attached as Exhibit B hereto.)

the internal affairs or governance of a corporation or other form of business enterprise.

     41.    Accordingly, this Court has original jurisdiction over this matter under CAFA.

**REMOVAL PROCEDURE**

     42.    A copy of this notice of removal is being served upon all known counsel of record, along with a copy of the Notice to the Clerk of Court for the Circuit Court of Miller County, Arkansas, which is being filed simultaneously in that Court.

     43.    A copy of all process, pleadings, and orders served upon Defendants in the state court action are attached as Exhibit A hereto.

     **WHEREFORE**, Defendants hereby provide notice that this action is duly removed.

Respectfully Submitted,

MITCHELL, WLLIAMS, SELIG,
     GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8869
Facsimile: (501) 918-7869
lpruitt@mwlaw.com

By:    _____
R.T. Beard III, Ark. Bar No. 71005
Lyn P. Pruitt, Ark. Bar No. 84121

GREER & MILLER, LLP
3512 Texas Boulevard
Texarkana, Texas 75503
Phone: (903) 280-7065
Fax: (903) 791-9304

By:    _____
John B. Greer III, Ark. Bar No. 71036

*Attorneys for Defendants*

*The Hanover Insurance Group, Inc. and*
*Massachusetts Bay Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by overnight

delivery to the following on this 30th day of November, 2010:

John C. Goodson
Matt Keil
Keil & Goodson P.A.
406 Walnut Street
Texarkana, Arkansas 71854

Jason E. Roselius
Douglas A. Terry
Derrick L. Morton
Nelson, Roselius, Terry & Morton
P.O. Box 138800
Oklahoma City, Oklahoma 73113-8800

Brad E. Seidel
Nix, Patterson & Roach, LLP
205 Linda Drive
Daingerfield, Texas 75638