IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ALLEN THATCHER, Individually and as
Class Representative on Behalf of all Similarly
Situated Persons                                                    PLAINTIFF

           v.                    Civil No. 10-4172

THE HANOVER INSURANCE GROUP, INC.
and THE MASSACHUSETTS BAY
INSURANCE COMPANY                                                   DEFENDANTS

O R D E R

NOW on this 29th day of May, 2012, the above referenced matter comes on for consideration. Pursuant to both the Opinion and Judgment of the Eighth Circuit Court of Appeals, dated November 4, 2011, and **Plaintiff's Motion to Remand (Doc. 21)** and the responses, replies and other briefing associated therewith, the issue of whether this Court has subject matter jurisdiction over the instant case is ripe for consideration. The Court, being well and sufficiently advised, finds and orders as follows:

1. The plaintiff initiated this action in the Circuit Court of Miller County, Arkansas and, by his First Amended Class Complaint filed therein on October 28, 2010, asserts the following claims:

     *  unjust enrichment;

     *  fraud;

     *  constructive fraud; and

     *  breach of contract.

The claims are said to arise from plaintiff's allegation that defendants failed to properly pay insureds for general contractor's overhead and profit under the terms of their insurance policies. Specifically, plaintiff claims

(a)   that defendants improperly failed to include in their payments to the insureds fees for general contractors' services [characterized as general contractor overhead and profit (GCOP) herein] -- the breach of contract claim;

(b)   that defendants engaged in a fraudulent scheme to conceal the availability of the GCOP and entitlement to payment for GCOP from their insureds -- the fraud and constructive fraud claims; and

(c)   that defendants have realized extensive profits and ill-gotten gains by reason of their failure to so properly compensate the insureds.

2.   On November 30, 2010, defendants filed their Notice of Removal in this Court in which they asserted, *inter alia*, that this matter meets the requirements for federal jurisdiction under the Class Action Fairness Act of 2005 (hereinafter "CAFA"), 28 U.S.C. § 1332(d).

3.   On December 7, 2010 at 11:02 A.M., defendants filed their answer to the plaintiff's complaint.

4.   Plaintiff did not then challenge defendants' removal nor the jurisdiction of this Court but, rather, on that same date of December 7, 2010 at 11:11 A.M. [some nine (9) minutes after

defendants had filed their answer], he filed a Notice of Voluntary Dismissal Without Prejudice.

5.   On February 16, 2011, this Court found that plaintiff's motion to dismiss should be granted under Rule 41(a)(2) of the Federal Rule of Civil Procedure.

6.   Defendants appealed this Court's dismissal ruling -- contending that, before granting the motion to voluntarily dismiss, this Court should have considered whether the motion to dismiss was an improper forum-shopping measure.  The Eighth Circuit agreed with defendants' contention and stated that "determining whether the district court had subject matter jurisdiction was at the crux of the issue of whether the motion to dismiss was being used for the improper purpose of seeking a more favorable forum."  *Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 1215 (8th Cir. 2011). The appellate court remanded the case with the following directions to this Court:

> After the trial court determines whether it has subject matter jurisdiction, it can consider whether dismissal without prejudice is appropriate, taking into consideration whether the motion to dismiss is a forum-shopping measure. Alternatively, if the court finds that it does not have subject matter jurisdiction, it should remand to the state court.

On November 25, 2011, a Mandate of the Eighth Circuit Court of Appeals was entered herein.

7.   On December 12, 2011 -- the final date set by this Court for the parties to file simultaneous briefs on the issues to be

3

addressed on remand -- plaintiff filed **Plaintiff's Motion To Remand**
(Doc. 21), asserting that this Court has no jurisdiction over this
case under a CAFA "because the amount in controversy does not
exceed $5 million."

8.   Under CAFA, this Court has jurisdiction of any class
action "in which the matter in controversy exceeds the sum or value
of $5,000,000, exclusive of interest and costs," and is a class
action in which "any member of a class of plaintiffs is a citizen
of a State different from any defendant."  28 U.S.C. § 1332(d)(2).
Class members' claims "shall be aggregated to determine whether the
matter in controversy exceeds the sum or value of $5,000,000,
exclusive of interest and costs."  28 U.S.C. § 1336(d)(6).

9.   The parties seem to agree -- as does the Court -- that
the only jurisdictional issue in dispute is the amount in
controversy.

10.   The Court notes both parties herein rely heavily on *Bell
v. Hershey Co.,* 557 F.3d 953 (8th Cir. 2009) as supporting their
respective contentions concerning jurisdiction in this case.  They
seem to agree that *Bell* holds that a party seeking to remove under
CAFA "must establish the amount in controversy by a preponderance
of the evidence regardless of whether the complaint alleges an
amount below the jurisdictional minimum."  *Bell,* 557 F.3d at 958.

The *Bell* further court held that "[t]he jurisdictional fact .
. . is not whether the damages *are* greater than the requisite

4

amount, but whether a fact finder *might* legally conclude that they are. . . ." *Bell*, 557 F.3d at 959 (*quoting Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2005) (emphasis supplied by *Bell*).

Once the removing party has met its burden, "remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell*, 557 F.3d at 958 (internal citation omitted).

Accordingly, under *Bell*, this Court must initially determine whether defendants have established, by a preponderance of the evidence, that the amount in controversy has been satisfied.

11.   Plaintiff, as master of his complaint, asserted four causes of action and did not characterize them as being alternative to each other.   The Court will address the complaint in the order it was drafted by plaintiff.

(a)   **Count One (Unjust Enrichment)** -- In this count, plaintiff alleges that defendants improperly failed to disclose information and concealed information relating to the potential availability of payments for GCOP; that this conduct is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent; that defendants have generated extensive profits and ill-gotten gains by reason of this alleged conduct; and that defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should have been paid to plaintiff and the class members.

5

A fair reading of the allegations in Count One indicates to the Court that plaintiff, on behalf of himself and the putative class, is asserting that defendants have been unjustly enriched by retaining for their use and benefit monies which should have been paid over to them and that defendants were -- and continue to be -- enjoying the benefit of those improperly retained funds.

While denying the allegation, defendants have provided evidence in the form of affidavits which indicate that the alleged benefit accruing to them could have taken the form of the earning power of monies allegedly improperly withheld by them during pertinent periods -- and that such "benefits" *could* amount to some $793,677.

Plaintiff assails defendants' submissions on this claim saying that they are not "evidence"; that defendants' calculations rest on speculation; and that their computations are faulty. However, plaintiff offers no counter affidavits or other persuasive submissions which would suggest that he could make no recovery at all on this claim if it were to be pressed -- relying instead on his disclaimers included in his complaint and his contentions that he would not be seeking a "double recovery."

The Court believes that defendants' submissions are "evidence" within the context of its removal effort and that they preponderate in favor of the notion that plaintiff *could* persuade a fact finder to award damages to him and the class members on the unjust

enrichment claim as indicated by data presented by defendants. Accordingly, the Court concludes that the possible value of these damages ($793,677) should be included in the calculations concerning the amount in controversy threshold for CAFA purposes.

(b) **Counts Two and Three (Fraud and Constructive Fraud)** -- In these counts -- after reasserting the allegations discussed above with respect to Count One (see paragraphs 71 and 74 of the amended complaint [Doc. 3]) -- plaintiff further alleges that defendants made false representations and gave false assurances regarding the amounts owed and available under the insurance policies in question and that they fraudulently concealed information regarding the GCOP. He further alleges that, by reason of these actions on the part of defendants, plaintiff and the Class Members "have been harmed and Defendants were able to retain monies that should have been paid to plaintiff as GCOP" (*Id.* at para. 69) and that such actions "injured Plaintiff and Class Members in the manner described herein." (*Id.* at para. 73).

While plaintiff does not, within either Count Two or Count Three, specify a precise amount of damages being sought with respect to each, he states in his Prayer For Relief that "Through *whatever form of relief may be available*, Plaintiff seeks recovery of less than $75,000 for himself and each Class Member . . ." (emphasis added). Additionally, plaintiff thrice repeats that "Plaintiff does not seek double recovery by setting forth *multiple*

7

*theories of recovery or multiple remedies."* (emphasis added)(*See* paragraphs B, C, and D of Prayer For Relief [Doc. 3]).  Thus, the Court believes it clear that plaintiff is seeking damages of up to $75,000 for himself and each of the Class Members on both these Claims.

Again, while denying the merits of either Count Two or Count Three, defendants nonetheless submit evidence in affidavit form tending to show that, under the "benefit of the bargain" measure of damages under Arkansas law, there could well be a basis on which a finder of fact might conclude that damages of as much as $1,231,469 were recoverable by plaintiff and the Class Members on either or both of these claims.

As he did with respect to Count One, plaintiff challenges defendants' submissions on these claims saying that they are not "evidence"; that defendants' calculations rest on speculation; and that their computations are faulty.  However, again plaintiff offers no counter affidavits or other persuasive submissions which would suggest that he could make no recovery at all on these claims if they were to be pressed -- relying instead on his disclaimers included in his complaint and his contentions that he would not be seeking a "double recovery."

The Court believes that defendants' submissions are "evidence" within the context of its removal effort and that they preponderate in favor of the notion that plaintiff *could* persuade a fact finder

8

to award damages to him and the class members on either or both the fraud or constructive fraud counts as indicated by data presented by defendants. Accordingly, the Court concludes that the possible value of these damages ($1,231,469) should be included in the calculations concerning the amount in controversy threshold for CAFA purposes based on plaintiff's complaint as drawn.

(c) **Breach of Contract (Count Four)** -- In this Count Four -- after reasserting the allegations discussed above with respect to Counts One, Two and Three (paragraph 74 of the amended complaint [Doc. 3]) -- plaintiff's complaint indicates that he is seeking for himself and the putative class damages for breach of contract which, as characterized by him in his brief (in agreement with defendants' calculations), would amount to about $2,411,077 -- being 20% of GCOP for all the class members. [*See* plaintiff's brief (Doc. 22) at page 2].

There seems to be no dispute that there is evidence from which a finder of fact *could* conclude that plaintiff and the Class Members were entitled to recover damages from defendants in the amount of $2,411,077. Accordingly, the Court concludes that the possible value of these damages should be included in the calculations concerning the amount in controversy threshold for CAFA purposes based on plaintiff's complaint as drawn.

(d) **Statutory Penalties** -- Defendants argue that -- as a matter of law per Ark. Code Ann. §23-79-208(a)(1) -- if plaintiff

9

and the class members should be successful on Count Four alleging breach of contract, he and they *could* be entitled to 12% penalties amounting to some $289,329 for a recovery of $2,411,077.

The Court perceives no opposition argument by plaintiff concerning that notion.  Accordingly, if that *could* occur, then the Court believes the potential amount of $288,329 should be included in the calculations concerning the amount in controversy threshold for CAFA purposes based on plaintiff's complaint as drawn.

(e)   **Statutory Attorneys' Fees re Breach of Contract** – Defendants further argue in reliance on Ark. Code Ann. §23-79-208(a)(1) that, if plaintiff and the class members should be successful on Count Four alleging breach of contract, he and they *could* be entitled to attorneys' fees which *could*  amount to as much as 40% of the amount recovery.  [See defendants' brief (Doc. 23) at page 14, citing as an example, *Capital Life & Accident Ins. Co. v. Phelps*, 66 S.W.3d 678, 682 (Ark. Ct. App. 2002)].  Based upon that potential, say defendants, plaintiff and the class members *could* be awarded attorneys' fees of as much as $1,890,221 on a total recovery of $2,411,077 on their breach of contract claim.

Plaintiff dismisses defendants' contentions that plaintiff and the class members could be awarded a 40% fee by saying that the *Phelps* case "is hardly evidence that Plaintiff would be entitled to the same 40% attorney's fee in a multi-million dollar case." [plaintiff's brief (Doc. 22) at page 19].  He goes on to correctly

10

opine that the determination of an attorney's fee is discretionary with the trial court who is obliged to take into consideration several factors to inform its exercise of that discretion. Plaintiff does not, however, argue that a 40% attorney's fee could not be sought in this case or that it would be unreasonable if awarded. Instead, he argues that defendants have made "no effort to provide evidence of a reasonable fee under these factors." [plaintiff's brief (Doc. 22) at page 20].

Plaintiff's arguments on this issue seem to beg the question presented: "Could (not would) a 40% attorneys' fee be awarded?" They are not accompanied by any evidence indicating that such fees *could not* be awarded -- they are simply naked arguments that defendants have not produced evidence to show that such fees *would* be awarded. The Court strongly doubts that any plaintiff's attorney would argue that attorneys' fees permissible under an applicable statute *could not be awarded* by a court with jurisdiction over the matter. Thus, while the Court expresses no opinion on whether such fees *would* be awarded in this case, it is satisfied by a preponderance of the evidence presented on the issue that such fees *could* be so awarded under certain possible circumstances. Accordingly, if that *could* occur, then the Court believes the potential amount of $1,890,221 in attorneys' fees should be included in the calculations concerning the amount in

11

controversy threshold for CAFA purposes based on plaintiff's complaint as drawn.

The sum of the calculations based upon defendants' submissions as to what damages *could* be awarded under plaintiff's complaint -- as thus far discussed -- would total $6,614,773, computed as follows:

```
Unjust Enrichment              $  793,677 [Para 11(a), supra]
Fraud and Constructive Fraud   1,231,469 [Para 11(b), supra]
Breach of Contract             2,411,077 [Para 11(c), supra]
Statutory Penalties              288,329 [Para 11(d), supra]
Statutory Attorneys' fees      1,890,221 [Para 11(e), supra]

                        Total  $6,614,773
```

This total sum exceeds the $5 Million "amount in controversy" threshold by over $1.5 Million. The Court notes that if, instead of a 40% attorneys' fee ($1,890,221) were awarded, a court awarded only a 20% attorneys' fee ($472,555), the "amount in controversy" would be $5,197,107 -- which is still clearly above the said threshold. The Court has no doubt that the attorneys here involved would be able to convince a court that, under applicable criteria, their services in a case recovering more than $2 Million would be worth at least 20% of the amount recovered.

(f) **Punitive Damages** -- Defendants point out that where an award of punitive damages is potentially available on the claims alleged, such damages must be considered in determining the amount in controversy. They also note that punitive damages are potentially available under Arkansas law on plaintiff's claims for

fraud and constructive fraud.  Defendants point to averments in plaintiff's complaint -- most of which have already been mentioned, supra -- which, in the Court's judgment, clearly implicate the potential for punitive damages in this case.  Finally, defendants suggest that punitive damages calculated at the rate of $5,000 for each class member ($11 Million, plus) *could* potentially be available in this case and they point to other CAFA cases wherein courts have concluded that punitive damages assessed utilizing multipliers of four to six times the total amount of compensatory damages would not be "legally impossible."

Plaintiff dismisses defendants' contentions that plaintiff and the Class Members could be awarded punitive damages saying they are not properly considerable "because Plaintiff has expressly disclaimed punitive damages in his complaint. (Doc. No. 3, ¶ 12 and Prayer for Relief, p. 21)."  While apparently acknowledging that the complaint's fraud allegations *could* form the basis for punitive damages claims, he insists that "[n]one of this proves that Plaintiff is seeking punitive damages, particularly when the complaint includes an express disclaimer of such damages."  To the contrary, there have been cases in which punitive damages have been properly awarded when merited even in the absence of their being sought after or prayed for by a party.  *See, e.g., Bowles v. Osmose Util. Servs.*, 443 F.3d 671, 675 (8th Cir. 2006) (affirming this court in allowing a party to recover punitive damages even if they

13

have not specifically requested punitive damages in the complaint as along as the defendant had adequate notice of the plaintiff's intention to seek punitive damages.)

Plaintiff also argues that, even if he sought punitive damages, defendants' estimates as to their potential or possible magnitude amount to shear speculation.  The Court does not agree.  Thus, it cannot be said that the complaint -- as drawn -- could not justify an award of punitive damages if the allegations of fraud are properly supported and proven.

In light of the Court's foregoing conclusions, it is apparent that punitive damages calculated at the rate of $5,000 per class member or at multiplier rates would further justify the conclusion that the $5 Million "amount in controversy" threshold is crossed by the complaint as drawn.  The Court will discuss, infra, the effect of plaintiff's disclaimers on the issue presented.

12.  The Court concludes that defendants have shown, by a preponderance of the evidence, that the total amount in controversy raised by plaintiff's Amended Complaint *could* exceed the $5 Million threshold required for federal jurisdiction over this matter.

13.  The Court now turns to a discussion of whether plaintiff has shown to a legal certainty that, in fact, the case *cannot* involve or exceed that amount.  *See Bell* 557 F.3d at 958 (*citing Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

14

Plaintiff argues that he can show, to a legal certainty, that the amount in controversy does not and could not exceed $5 Million because -- following *Bell* -- he has disclaimed any intention to seek damages in excess of that figure. To back up this argument, plaintiff points to the following assertions contained in his amended complaint:

(a)   In paragraph 11, of the amended complaint, he states:

> The amount in controversy <u>for Plaintiff and each Class member</u> is less than $75,000 for purposes of federal jurisdiction. Plaintiff expressly stipulates to seek less than $75,000 total recovery, including costs and expenses, court costs, pre and post-judgment interests, and attorneys' fees, <u>for each Plaintiff or Class Member</u>. (Emphasis added)

(Doc. 3, page 4 of Amended Complaint).

(b)   In paragraph 12 of the amended complaint, he states:

> The total amount in controversy is less than $5,000,000, exclusive of interest and costs, for purposes of federal jurisdiction. Specifically, the claims of <u>Plaintiff and all Class Member</u> are less than $5,000,000 when aggregated, exclusive of interests and costs. <u>Plaintiff</u> makes no claim for declaratory or injunctive relief. <u>Plaintiff</u> specifically disclaims any actual or potential entitlement to punitive damages. (Emphasis added)

(Doc. 3, page 4 of Amended Complaint).

(c)   Finally, the Prayer for Relief states that plaintiff, individually and as class representative on behalf of all similarly situated persons, prays for relief and judgment against defendants, jointly and severally, as follows:

(1)   Awarding money damages to <u>Plaintiff and Class Members</u> from the Defendants in an amount equal to the amount that should have been paid to Class Members for GCOP, provided that <u>Plaintiff</u> seeks less than $75,000 total recovery <u>for himself and each Class Member</u> and further provided that <u>Plaintiff</u> does not seek double recovery by setting forth multiple theories of recovery or multiple remedies; (Emphasis added)

(Doc. 3, Paragraph B, page 20 of Amended Complaint)

(2)   Awarding pre-judgment interest; provided that <u>Plaintiff</u> seeks less than $75,000 total recovery <u>for himself and each Class Member</u> and further provided that <u>Plaintiff</u> does not seek double recovery by setting forth multiple theories of recovery or multiple remedies; (Emphasis added)

(Doc. 3, Paragraph C, page 20 of Amended Complaint)

(3)   Awarding attorneys' fees and costs; provided that <u>Plaintiff</u> seeks less than $75,000 total recovery <u>for himself and each Class Member</u> and further provided that <u>Plaintiff</u> does not seek double recovery by setting forth multiple theories of recovery or multiple remedies; (Emphasis added)

(Doc. 3, Paragraph D, page 20 of Amended Complaint)

(4)   [t]hrough whatever form of relief may be available, <u>Plaintiff</u> seeks recovery of less than $75,000 <u>for himself and each Class Member</u> from all Defendants, jointly and severally, including all interest and costs, prejudgment interest, post-judgment interest, court costs, and attorneys fees. Therefore, although <u>Plaintiff</u> contends that Defendants are jointly and severally liable for all damages and relief owed to <u>Plaintiff and each Class Member</u>, <u>Plaintiff</u> expressly seeks less than $75,000 total – from whatever source – <u>on behalf of himself and each Class Member and so stipulates for all purposes</u>. Pursuant to Arkansas Rule of Civil Procedure 8(a), <u>Plaintiff and each Class Member</u> is limited to less than $75,000 total recovery.   Further, as set forth in this Complaint, the total amount in controversy is less than $5,000,000, exclusive of interest and costs, for purposes of federal jurisdiction.   Specifically, the claims of <u>Plaintiff and all Class Members</u> are less than $5,000,000 when aggregated, exclusive of interest and costs.

16

> <u>Plaintiff</u> makes no claim for declaratory or injunctive relief.  <u>Plaintiff</u> specifically disclaims any actual or potential entitlement to punitive damages.

(Final Paragraph, pages 20 and 21 of Amended Complaint)

14.  Plaintiff argues that the "stipulations and express disclaimers" in his amended complaint regarding the amount in controversy demonstrate the absence of federal jurisdiction under the CAFA.  In support of his contention, plaintiff relies on *Bell.*

It is nowhere suggested in the *Bell* case, however, that the mere pleading of an amount less than the jurisdictional threshold for federal jurisdiction <u>establishes to a legal certainty</u> that amounts in excess of that threshold could not be awarded under the pleading.

Rather, the Court specifically stated:

> In order to ensure that any attempt to remove would have been unsuccessful, Bell could have included a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum upon remand; it is too late to do so now.  *De Aquilar, 47 F.3d at 1412.* ("[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant.") [quoting *In Re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)(per curiam)].

*Bell*, 557 F.3d at 958.[1]

---

[1]     This Court, in applying *Bell*, has held that a "Sworn and Binding Stipulation" filed by a plaintiff and attached to the complaint is effective to evade federal jurisdiction under CAFA. *See Tomlinson v. Reebok International Ltd.*, Civil Action No. 11-5036; *Tomlinson v. Sketchers USA, Inc.*, Civil Action No. 11-5042; *Stagg v. New Balance Athletic Shoes, Inc.*, Civil Action No. 11-5043; *Overby v. L.A. Gear, Inc.*, Civil Action No. 11-5046; and *Brady v. Collective Brands, Inc.*, Civil Action No. 11-5053.

17

In this case, plaintiff could have included a binding stipulation with his complaint.  He chose not to.

Plaintiff nonetheless continues to argue that "the express and intentional language set forth in his Complaint is sufficient to show that the amount in controversy is less than the jurisdictional minimum" (Doc. 26 at pages 5, 6).  However, the Eighth Circuit's holding in *Bell* says otherwise and plaintiff cites no controlling authority which supercedes that holding.

While the panel in *Bell* could have said that -- in addition to including a binding stipulation with the complaint to disclaim damages above a certain threshold in order to avoid federal jurisdiction -- a plaintiff could achieve that same purpose by including language in his complaint disclaiming damages above the jurisdictional threshold, it did not do so.  Instead, it rejected Bell's suggestion, at argument, that the ad damnum clause contained within his petition (in violation of Iowa law) was equivalent to a binding stipulation. *See Bell* at 557 F.3d at 958.  The *Bell* panel also rejected Bell's contention that the doctrine of judicial estoppel (based upon the disclaimers in the petition) would serve to make the petition-disclaimers equivalent to a binding stipulation saying:

> The doctrine of judicial estoppel is similarly unavailing since we find no evidence that upon remand an Iowa court would prohibit recovery in excess of the amount alleged as a matter of law.  *Cf. Winnebago Indus., Inc. v. Haverly,* 727 N.W.2d 567, 574-75 (Iowa 2006)(doctrine of judicial estoppel in Iowa "prevents a party who has *successfully* taken a position in one

18

litigation from taking the opposite position in a *subsequent*
litigation . . .") (emphasis supplied).

*Bell* at 557 F.3d 959

It is clear to this Court that *Bell* holds that a binding
stipulation submitted with a complaint can be sufficient to avoid
federal jurisdiction in a CAFA case such as this.  While it does
not categorically hold that disclaimers within a complaint could
never be sufficient for that purpose, neither does it clearly hold
that they could be -- or that they are "just as good" as a binding
stipulation.

All courts addressing the issue seem to agree that the
analysis as to what is or is not being claimed in a lawsuit centers
on what is contained in the complaint or petition initiating it.
Thus, the Court sees no reason why *Bell* and the other courts
addressing this issue (limitation of damages claims for
jurisdictional purposes) would not have just simply said that
disclaimers, stipulations and the like designed to limit damage
claims below a certain threshold should or could be included within
the complaint (or petition) itself -- rather than in an affidavit
or stipulation to be filed <u>with</u> the complaint -- if, in fact, they
held the view that the two methods were the same or sufficiently
equivalent.

This Court does not believe the two methods are the same or
sufficiently equivalent.  Complaints and petitions are drawn and
signed by attorneys who are trained in the law.  They necessarily

19

include many things necessary to properly initiate a lawsuit --
many of which would be of no interest to a client and would most
likely not be understood by him.   If the disclaimers and/or
stipulations are interspersed in the legal jargon of a lengthy
complaint, it is difficult, if not impossible, to regard them as
the clear expression of the client's intentions sufficient to
establish, to a "legal certainty", what their effect would be on a
jurisdictional issue.  On the other hand, a separate affidavit or
stipulation filed <u>with</u> the complaint (as counseled by *Bell*)
provides a short, focused and clear statement of the party's
intentions on the matters crucial to the jurisdictional issue --
uncluttered by extraneous matters.   Moreover, affidavits and
stipulations are signed by the parties -- the former under oath --
and not by their attorneys.  Finally, while procedural rules are
rather clear about how and when pleadings may be amended, the Court
is unaware of any such rules which would permit the amendment of
affidavits and/or stipulations.    In  light of these and other
reservations about the contention, the Court sees no reason to
discuss it further since it feels bound by *Bell*.

15.  Plaintiff also argues that, even if the disclaimers, etc.
in his complaint are not sufficient under *Bell* to preclude federal
jurisdiction, they are sufficient to accomplish that result because
of the enactment of Ark. Code Ann. § 16-63-221 (providing that a
plaintiff is bound by a declaration with respect to the amount in

controversy *unless the plaintiff subsequently amends the complaint to pray for damages in an amount that exceeds the jurisdictional limits of the court)*.  Although plaintiff acknowledges that Ark. Code Ann. § 16-63-221 did not become law until *after* this case was filed, he argues that it <u>will</u> be applied retroactively under Arkansas law.  However, the cases cited to support that conclusive statement at best state only that such retroactive application "may" apply and that such legislation is "often given retroactive application." *Steward v. Statler*, 371 Ark. 351, 354 (2007); *Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 297 (2000). The Court is not convinced -- certainly not to a legal certainty -- that the cited statute would be given retroactive application in this case.  Moreover, even if it were, such application would be of little import because of the obvious fact that -- notwithstanding any such declaration -- the complaint could be later amended.

Plaintiff further argues that, in light of the disclaimers, etc. in his complaint, the doctrine of judicial estoppel would prevent him from seeking or obtaining damages inconsistent with them.  As previously noted, the *Bell* court rejected the judicial estoppel argument as it related to Iowa law saying that "we find no evidence that upon remand an Iowa court would prohibit recovery in excess of the amount alleged as a matter of law."  (citing *Bell*, 557 F.3d at 959).  While, admittedly, the concepts of judicial estoppel under Arkansas law and under Iowa law may not be

identical, it may be properly concluded that they both feature reasoned approaches to be utilized in given cases to reach a determination as to whether the doctrine should be applied. Thus, any opinion by this Court that judicial estoppel would be applied in this case by an Arkansas court would be, at best, *dicta*, and clearly speculative. Accordingly, the Court sees no proper basis to conclude, to a legal certainty, that an Arkansas court would apply the doctrine of judicial estoppel to prevent plaintiff from seeking or recovering damages inconsistent with the disclaimers, etc. contained in his complaint.

16.   Having decided that it has proper subject matter jurisdiction, the Court will now turn to a reconsideration of plaintiff's motion to dismiss. The Court begins with the premise stated by the Eighth Circuit in this case that "a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *Thatcher*, 659 F.3d at 1214 (*citing Hamm v. Rhone-Poulenc Rorer Pharm., Inc.,* 187 F.3d 941, 950 (8th Cir. 1999) (internal citations omitted)).

As mentioned by the Eighth Circuit panel, plaintiff has not provided to the Court any good reason why it wants to voluntarily dismiss its case, re-file in state court and eliminate the first three counts stated in his amended complaint (unjust enrichment, fraud and constructive fraud). The obvious reason -- as admitted by plaintiff in his presentations -- is to avoid removal of the

class action to federal court upon it being re-filed as a breach of contract action only.  That clearly amounts to improper forum shopping and the analysis need proceed no further.

As has been previously noted, no court of competent jurisdiction has yet recognized or certified plaintiff as a legitimate class representative; or the putative class; or the attorneys representing this plaintiff as proper attorneys for a proper representative and the proper class members.  While this plaintiff and his attorneys had the right to draw his complaint as he saw fit (as the master of his complaint), he and they are obliged to live with it as drawn and to pursue it -- if they can -- in a court having proper jurisdiction over it as drawn.  They are not to be permitted to shop for a new and hopefully more favorable forum if it turns out that their complaint -- as drawn -- places them in a court not of their liking.

Accordingly, plaintiff's motion to dismiss without prejudice will be denied.

17.  Also pending before the Court is plaintiff's **Motion for Protective Order (Doc. 27)** and defendants' brief in opposition thereto (doc. 28).  Plaintiff's motion relates to a subpoena issued by defendants to a third-party, which acted as the class action administrator in another class action involving issues similar to this case.

23

Plaintiff objects to the subpoena on the grounds that a party may not seek discovery prior to the Rule 26(f) conference, which has not yet occurred in this case.  *See* Fed. R. Civ. P. 26(d)(1).

Defendants assert that the information they seek pursuant to the subpoena is relevant to show that the amount in controversy has been met in this case.  Given this Court's ruling *supra*, the Court finds that the motion is moot and it will be denied as such.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion to Remand** (Doc. 21) and **Plaintiff's Motion To Voluntarily Dismiss** (Doc. 10) are both hereby **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's **Motion for Protective Order (Doc. 27)** is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

      /s/ Jimm Larry Hendren
     **JIMM LARRY HENDREN**
     **UNITED STATES DISTRICT JUDGE**

24